1
2
3
4
5
6

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

7

8  DEBI BLANKENSHIP, et al.,            )        3:05-CV-00357-RAM
                                       )
9            Plaintiffs,               )        **ORDER**
                                       )
10      vs.                            )
                                       )
11                                     )
   CARL W. COX, et al.,                )
12                                     )
             Defendants.               )
13  _____)

14       Before the court is Defendants' Motion for Summary Judgment. (Doc. #16). Plaintiffs

15  opposed the motion (Doc. #30), and Defendants replied (Doc. #34).

16                            **BACKGROUND**

17       On September 5, 2003, around 6:48 in the evening, Defendant Carl. W. Cox, Jr.

18  allegedly observed five juveniles seated in a circle on Spring Creek High School property.

19  (Doc. #16). As Defendant approached, the juveniles scattered and ran around the corner of

20  the school building. (*Id.*) Defendant Cox asserts in his affidavit that he observed smoke rising

21  from the place from which the juveniles fled. (*Id.* at Exh. 16). He pursued them. (Doc. #16).

22  There has been no evidence that Defendant yelled "stop, police!" or anything similar. (*See*,

23  *Id.*). Defendant Cox allegedly "caught" two of the fleeing juveniles, Ashlee Odle and Talisa

24  Thiele, who then allegedly informed Defendant Cox of the identities of the other three youths

25  and pointed out Plaintiff Peevers and Sean Matthews, another youth. (*Id.*). By this time,

26  Plaintiff Staci Blankenship had apparently escaped into a crowd of students. (*Id.*). Ms.

27  Blankenship was not apprehended at that time but was later issued a notice to appear upon

28  request. (*Id.*)

1   According to the account of events given by Plaintiff Peevers at her deposition, after

2   questioning Plaintiff Peevers, Ms. Odle, and Ms. Thiele regarding who started the fire, and

3   apparently unsatisfied with the "not me" answers that all three girls allegedly gave, Defendant

4   Cox allegedly told the three  girls to get in the back of his patrol car. (Doc. #16, Exh. 2).

5   Apparently the youths complied.  (*Id.*).  A short while later, when Defendant Cox returned to

6   the car, Ms. Thiele allegedly informed Defendant Cox that Mr. Matthews was the one who

7   started the fire.  (*Id.*)[1]  Defendant Cox then instructed Plaintiff Peevers and the other girls to

8   get out of the vehicle.   (*Id.*)   Defendant Cox and another deputy then questioned Mr.

9   Matthews and then Defendant Cox allegedly returned to where the girls were waiting and

10  advised them that they were being placed under arrest for fourth degree arson.  (*Id.*)  The

11  juveniles, according to Plaintiff Peevers, were handcuffed and placed in the cruiser.  (*Id.*)

12  However, it is not clear when the detained juveniles were handcuffed.  Another deputy

13  allegedly transported them to the juvenile detention center.  (*Id.*)   Plaintiffs allege that

14  Defendant Cox did not investigate the scene and discover the burnt matter until after Plaintiff

15  Peevers was arrested.  (Doc. #30).

16  Defendant Cox's version differs in some important respects.   Most notably, in his

17  affidavit he states that he went over to investigate the area where the juveniles had been

18  gathered *before* they were placed in the cruiser and transported to the juvenile detention

19  facility.  (Doc. #16, Exh. 1).  He also denies ever handcuffing the juveniles.  (*Id.*)

20  Defendant Deputy District Attorney Michelle Rodriguez filed a Delinquent Act

21  Juvenile Petition against Plaintiff Peevers on November 11, 2003, alleging that Peevers

22  committed an act of delinquency by violating NEV. REV. STAT. 205.020 (fourth degree arson).

23

24  [1]Further, Mr. Matthews, in his deposition, testified that Defendant Cox "singled [him] out" as the responsible party after smelling his fingers, thus giving rise to an inference that Defendant Cox knew that Plaintiff Peevers and Plaintiff Staci Blankenship were not responsible at the time he arrested

25  them. (Doc. # 19, Exh. 22).  Further, the Defendants admit in their brief that Mr. Matthews admitted to starting the fire at his delinquency hearing, which was sometime in December (although the portion of his deposition that would likely include the date this occurred in December has not been provided

26  to the court).  Thus, it is unclear whether Defendant Rodriguez knew that Mr. Matthews was responsible for the fire but pursued the charges against Plaintiffs Peevers and Blankenship anyway.

27

28  2

(Doc. #16).  On December 29, 2003, Defendant Rodriguez filed an Amended Delinquent Act Juvenile Petition, amending the charges to a violation of NEV. REV. STAT. 475.010 ("Willful or negligent failure to guard or extinguish fire").  (*Id.*)  Plaintiff Peevers was present for her initial appearance on those charges and denied the allegations.  (*Id.*)  The charges were later dismissed without further proceedings.

Plaintiff Debra Blankenship, mother of Staci Blankenship, first heard that her daughter might be in trouble when her sons arrived home from the football game and relayed a message from the police: the authorities were looking for Staci. (Doc. #16).  Mrs. Blankenship then apparently went to retrieve Staci from the friend's house where she had planned to stay the night. (Doc. #16, Exh. 12).  Mrs. Blankenship alleges that that night she stayed up all night crying. (Doc. #16, Exh.13).  In her deposition Mrs. Blankenship testified regarding numerous contacts she made with the authorities, including taking her daughter to the Juvenile Detention Center the next morning. (*Id.*).  Finally, Mrs. Blankenship was put in contact with Defendant Cox, who allegedly assured her that her daughter would not be arrested at school (apparently a fear of Mrs. Blankenship's) and made an appointment to come to the Blankenship home to discuss the incident with Staci Blankenship. (*Id.*)  At that meeting, Defendant Cox issued Staci Blankenship a "Notice of Juvenile Violation." (Doc. #16, Exh. 15).   Later, on December 22, 2003 a juvenile petition was filed against Staci Blankenship, charging her with commission of a delinquent act for violation of NEV. REV. STAT. 475.010 ("Willful or negligent failure to guard or extinguish a fire"). (Doc. #16).  Ms. Blankenship appeared at the initial hearing on January 20, 2003 and denied the allegations. (*Id.*).  The charges were later dismissed without further proceedings.  (*Id*)

Claims in the Peevers/Noland Suit

Plaintiff Peevers, her mother, Plaintiff Lana Noland, and her stepfather, Plaintiff Jeffrey Noland, filed suit on November 10, 2005 alleging in the first claim for relief that Defendant Elko County violated the Plaintiff's Fourth Amendment rights in violation of 42 U.S.C. § 1983 because its custom or policy proximately caused damages to Plaintiff, in the

second claim for relief that Defendant Cox violated Plaintiff's Fourth Amendment rights, in the third claim for relief that the Defendant Cox is liable to Plaintiff Peevers for the tort of outrage (intentional infliction of emotional distress), in the fourth claim for relief that Defendant Cox is liable to Plaintiffs Jeffrey and Lana Noland for negligent infliction of emotional distress, in the fifth claim for relief that Defendant Cox committed battery against Plaintiff Peevers, in the sixth claim for relief that Elko County Assistant District Attorney Michelle Rodriguez maliciously prosecuted Plaintiff Peevers and that Elko County is liable for Ms. Rodriguez's actions, in the seventh claim for relief that Defendant Cox made a false arrest of Plaintiff Peevers in violation of Nevada State Law, in the eighth claim for relief that Defendant Cox falsely imprisoned Plaintiff Peevers in violation of Nevada State Law, in the ninth claim for relief that Defendant Cox maliciously prosecuted Plaintiff Peevers in violation of Nevada State Law, in the tenth claim for relief that Defendant Elko County is liable to Plaintiffs (not specific as to which Plaintiffs) for negligent infliction of emotional distress, and in the eleventh claim for relief that Defendant Elko County is liable for malicious prosecution for the conduct of its Deputy District Attorney, Michelle Rodriguez.  (Doc. #2 in 3:04-cv-00643-RAM).  The defendants made a motion to dismiss the sixth and eleventh claims for relief.  (Doc. #9 in 3:04-cv-00643-RAM).  The court denied the motion as to the sixth claim for relief and granted it as to the eleventh claim.  (Doc. #13 in 3:04-cv-00643-RAM).

Claims in the Blankenship Suit

Plaintiff Staci Blankenship and her parents, Plaintiffs Debi and Rick Blankenship, filed suit on July 13, 2005 alleging in the first claim for relief that Defendant Elko County had a custom or policy that violated Plaintiff Staci Blankenship's Fourth Amendment rights in violation of 42 U.S.C. §1983, in the second claim for relief that Defendant Cox violated Plaintiff Staci Blankenship's Fourth Amendment rights in violation of section 1983,[2] in the

---

[2]The first and second claims for relief in the Blankenship complaint actually allege that Plaintiff's "Fourteenth Amendment" rights were violated.  The court assumes counsel actually meant to assert that Plaintiff's "Fourth Amendment" rights were violated and so considers the present motion

third claim for relief that Defendant Cox is liable to Plaintiff Staci Blankenship for the tort of outrage (intentional infliction of emotional distress) and that Defendant Elko County is also liable because it ratified Defendant's actions, in the fourth claim for relief that Defendant Cox is liable to Plaintiffs for negligent infliction of emotional distress (not specific as to which Plaintiffs), in the fifth claim for relief that Elko County Assistant District Attorney Michelle Rodriguez maliciously prosecuted Plaintiff Staci Blankenship and that the malicious prosecution was engaged in pursuant to a custom or policy of Elko County and as such Elko County violated Plaintiff Staci Blankenship's rights under section 1983, in the sixth claim for relief that Defendant Cox is liable for malicious prosecution of Plaintiff Staci Blankenship under Nevada State law, and in the seventh claim for relief that Defendant Elko County is liable for the (1) negligent infliction of emotional distress, (2) false arrest, (3) false imprisonment, and (4) malicious prosecution.  (Doc. #2).

The two cases were later consolidated on July 21, 2005.  (Doc. #10)_

## **DISCUSSION**

### I.     **Standard for Summary Judgment**

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court.  *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).  The moving party is entitled to summary judgment where, viewing the evidence and the inferences arising therefrom in favor of the nonmovant, there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56©; *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996).  Judgment as a matter of law is appropriate where there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmoving party.  FED. R. CIV. P. 50(a).  Where reasonable minds could differ on the material facts at issue, however, summary judgment is

accordingly.  Plaintiffs' counsel is reminded to be more careful in future filings.

1  not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), cert. denied,

2  516 U.S. 1171 (1996).

3  　　　The moving party bears the burden of informing the court of the basis for its motion,

4  together with evidence demonstrating the absence of any genuine issue of material fact.

5  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden,

6  the party opposing the motion may not rest upon mere allegations or denials of the pleadings,

7  but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v.*

8  *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Although the parties may submit evidence in

9  an inadmissible form, only evidence which might be admissible at trial may be considered by

10  a trial court in ruling on a motion for summary judgment. FED. R. CIV. P. 56(c); *Beyene v.*

11  *Coleman Sec. Serv., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988).

12  　　　In evaluating the appropriateness of summary judgment, three steps are necessary:

13  (1) determining whether a fact is material; (2) determining whether there is a genuine issue

14  for the trier of fact, as determined by the documents submitted to the court; and (3)

15  considering that evidence in light of the appropriate standard of proof. *Anderson*, 477 U.S.

16  at 248. As to materiality, only disputes over facts that might affect the outcome of the suit

17  under the governing law will properly preclude the entry of summary judgment. Factual

18  disputes which are irrelevant or unnecessary will not be considered. *Id.* Where there is a

19  complete failure of proof concerning an essential element of the nonmoving party's case, all

20  other facts are rendered immaterial, and the moving party is entitled to judgment as a matter

21  of law. *Celotex*, 477 U.S. at 323. Summary judgment is not a disfavored procedural shortcut,

22  but an integral part of the federal rules as a whole. *Id.*

23  **II.    Probable Cause to Arrest under the Fourth Amendment**

24  　　　The Peevers/Noland complaint alleges that Plaintiff Peevers has a cause of action

25  under the Fourth Amendment against Defendant Elko County in the first claim for relief and

26  against Defendant Cox in the second claim for relief. Although the complaint does not

27  explicitly say so, the implication is that these claims relate to the alleged wrongful arrest of

28

Plaintiff Peevers.[3]  The Blankenship complaint alleges that Plaintiff Staci Blankenship has a cause of action under the Fourth Amendment against Defendant Elko County in the first claim for relief and against Defendant Cox in the second claim for relief.  Again, although the complaint does not explicitly say so, the implication is that these claims relate to an alleged wrongful arrest of Plaintiff Staci Blankenship.

The Fourth Amendment protects "[t]he right of people to be secure in their persons, houses, papers, and effects, against unreasonable search and seizure." U.S. CONST. Amend. IV.

An arrest made without a warrant requires a showing of probable cause.  *Gilker v. Baker*, 576 F.2d 245, 246 (9th Cir. 2001).  An arrest made without probable cause or other justification provides the basis for a claim of unlawful arrest under § 1983 as a violation of the Fourth Amendment.  *Dubner v. City of San Francisco*, 266 F.3d 959 (9th Cir. 2001).  A warrantless arrest is reasonable where the officer has probable cause to believe a crime has been or is being committed.  *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004).  "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001).  Whether a police officer has probable cause to arrest is ascertained by looking at the facts known to the officer at the time of the arrest.  *Turner v. County of Washoe*, 759 F. Supp. 630, 634 (D. Nev. 1991).  Probable cause exists if the facts and circumstances within the person's knowledge and of which they have reasonably trustworthy information are sufficient to warrant a prudent man in believing that the person had committed a crime.  *Id.*

The existence of probable cause vitiates any claim of unlawful arrest.  *Pierson v. Ray*, 386 U.S. 547 (1967); *Wyatt v. Cole*, 504 U.S. 158, 165 (1992); *Turner,* 759 F.Supp. at 633 ("It

---

[3]The Peevers/Noland complaint also includes a cause of action by Plaintiff Peevers against Defendant Cox for the tort of false arrest under Nevada State Law.  The Defendants have not raised any arguments about this claim and so it is not addressed along with the other claims relating to the arrest.

1    has long been established that a police officer who arrests with probable cause is immune

2    from suit in a civil rights action."). Whether charges are later dismissed does not affect the

3    determination of whether probable cause existed to support the arrest. *Beauregard v.*

4    *Wingard*, 362 F.2d 901, 903 (9th Cir. 1996).

5        In a section of Defendants' motion dealing with probable cause to arrest, Defendants

6    cite a number of cases, such as *Dutt v. Kremp*, 108 Nev. 1076, 1080, 844 P.2d 786, 789

7    (1992), dealing with probable cause to prosecute. Appearing where it does in Defendants'

8    argument, this section of the motion appears to assert that the standard applicable for

9    probable cause to prosecute also applies when evaluating probable cause to arrest. (Doc. #16).

10   This is incorrect. Probable cause to arrest and probable cause to prosecute are separate

11   inquiries.[4] Although it is for the trial court to determine the issue of probable cause, as a

12   matter of law, in a criminal prosecution, in a section 1983 action, conflicts in the evidence

13   must be resolved by the jury. *McKenzie v. Lamb*, 738 F.2d 1005, 1008 (9th Cir. 1984)(holding

14   that "summary judgment is appropriate only if no reasonable jury could find that the officers

15   did or did not have probable cause to arrest.")

16       First, although the Blankenship complaint alleges that Defendant Cox "failed to

17   exercise reasonable care as to avoid false arrest" only the seventh claim for relief (against Elko

18   County) directly claims that Plaintiff was arrested without probable cause. (Doc. #2).

19   Plaintiffs' first and second claims for relief are vague as to how the Defendants (Defendant

20   Elko County, in claim one, and Defendant Cox in claim two) violated Plaintiffs' rights. (Doc.

21   #2). The undisputed facts before this court indicate that Plaintiff Staci Blankenship was not,

22   in fact, arrested at all, but merely issued an order to appear. (Doc. #18, Exh. 15). Plaintiffs'

23   reply (Doc. #30) does not address Plaintiff Staci Blankenship's alleged unlawful arrest and

24

25       [4]Defendants motion also discusses at some length the standard governing sufficient cause for
26   a "stop". This also confuses the issues. Plaintiffs here do not claim that Defendants did not have
     sufficient cause to stop and question the juveniles regarding the fire; Plaintiffs' claims relate to the
27   arrest and subsequent charges filed against the minor Plaintiffs and the subsequent alleged emotional
     distress experienced by the minor Plaintiffs' parents and the minor Plaintiffs themselves.

28

the court is unaware of any evidence showing that Plaintiff Staci Blankenship was actually arrested.  As such, insofar as Plaintiff Staci Blankenship's first and second claims for relief are based on an alleged unlawful arrest, the motion for summary judgment is **GRANTED**. Defendants' motion for summary judgment is also **GRANTED** as to the unlawful arrest claim in Plaintiff Blankenship's seventh claim for relief.

Defendants also suggest that Plaintiff Peevers was not arrested, but merely detained. (Doc. #16, #34).  However, it is well settled that a detention ripens into arrest where a reasonable person would believe he is not free to leave after brief questioning. *United States v. Del Vizo*, 918 F.2d 821 (9th Cir. 1990) (holding use of handcuffs an important factor in determining that an arrest occurred).  Whether or not the person is "free to leave" is evaluated from the perspective of the person seized. *United States v. Delgadillo-Vasquez*, 856 F.2d 1292 (9th Cir. 1988).  In *Benitez-Mendez v. INS*, 760 F.2d 907. 909 (9th Cir. 1983), the Ninth Circuit found that the Plaintiff was seized once he was placed in the police cruiser and that he reasonably "would have believed he was not free to leave. [citation omitted]."

Here, Plaintiff Peevers was handcuffed, placed in the back of the police car, and transported to the juvenile detention facility.  Although a dispute exists regarding when Plaintiff was handcuffed, the court finds that the incident in question exceeded a mere detention and ripened into an arrest when Plaintiff was placed in the back of the cruiser.  No teenager would think they were free to get out of a police vehicle and leave without permission from the officer.  Thus, Defendant Cox needed probable cause to arrest, not just reasonable suspicion to stop and question.

Here, Defendants present various theories regarding the offense for which Defendant allegedly had probable cause to arrest Plaintiff Peevers: (1) obstructing an officer in his legal duty in violation of NEV. REV. STAT. 197.190, (2) arson in the fourth degree in violation of NEV.

1    REV. STAT. 205.025, and (3) juveniles in need of supervision under NEV. REV. STAT.

2    62C.010(1)(b).[5]

3         Defendants claim that, as a matter of law, unprovoked headlong flight constitutes

4    obstructing a public officer in his legal duty in violation of NEV. REV. STAT. 197.190.  (Doc.

5    #16).  The court, however, does not find the cases cited by Defendant to be persuasive or

6    conclusive on this matter.  The portion of *State v. Lisenbee,* 116 Nev. 1124, 1130, 13 P.3d 947,

7    951 (2000)*,* that Defendants cite is vague as to what "public policy" was violated by Mr.

8    Lisenbee's flight from the officers, and, moreover, is dicta.  At best, the "public policy"

9    mentioned in *Lisenbee* permits third parties to exercise force against a police officer where

10   the third party has witnessed the police using unlawful or excessive force on another, *see*

11   *Batson v. State*, 113 Nev 669, 676 (1997).  Moreover, Defendants' citations refer to cases

12   dealing with violation of NEV. REV. STAT.  199.280 (resisting public officer), not 197.190

13   (obstructing public officer).  Flight does not, per se, constitute a violation of NEV. REV. STAT.

14   197.190.  There are many reasons why an individual might flee from the police, many of them

15   unrelated to a desire to obstruct the police in their duties.  The court does not find juveniles

16   fleeing from the police indicative of wrongdoing.  While unprovoked flight combined with

17   other circumstances might give the police reason to stop and question a fleeing individual,

18   *see Illinois v. Wardlow*, 528 U.S. 119 (2000)(where police had reasonable suspicion to stop

19   and question a suspect who fled from a high-narcotics area after noticing police), unprovoked

20   flight does not, by itself, give probable cause to arrest.  As stated earlier, whether Defendant

21   Cox had reasonable suspicion to stop and question the juveniles is not the issue in this case.

22   Further, there remains a dispute of material fact regarding whether the statements Plaintiff

23   Peevers made in response to Defendant Cox's question were "willfully untrue, misleading or

24

25   _____

26        [5]The parties should take note that Defendants' citation to "NRS 62C.0110" seems to be a mistake
     as there is no such statute.  The court assumes that Defendants meant to cite to Nevada Revised

27   Statutes 62C.010 (Captioned: "Grounds for taking child into custody; notification of parent or guardian
     of child and probation officer; release or further detention of child.").

28

exaggerated" or whether Peevers, by making the statements, "willfully hinder[ed], delay[ed] or obstruct[ed]" Defendant Cox in the discharge or his duties.  The evidence before the court shows that Peevers answered "not me" when asked who started the fire.  Further, before they were arrested Peevers and her juvenile companions informed Defendant of the identity of the juvenile who started the fire.  The plain language of the statute requires that the offender act willfully.  The facts before the court are such that a reasonable jury could find that Defendant Cox did not have probable cause to arrest Peevers for the offense of "obstructing public officer." NEV. REV. STAT. 197.190.

Defendants also argue that summary judgment should be granted as to Plaintiff's claim of false arrest because the Plaintiff Peevers' presence around the fire "fully supported" the arrest.  (Doc. #16).  Defendants cite many cases as examples of situations in which law enforcement was justified in arresting more than one individual because it could not be determined precisely who was responsible for the criminal conduct at issue.  *See*, *e.g.*, *Maryland v. Pringle*, 530 U.S. 366 (2003)(where all three passengers of a car denied ownership of a bag of cocaine discovered therein).  The evidence before the court at this time indicates that the juveniles jumped up and fled when they noticed Defendant Cox and that he observed some smoke rising from the area they had just abandoned.  (Doc. #16). Defendant Cox then pursued the fleeing juveniles around the corner of the high school.  (*Id.*). After Defendant Cox placed Plaintiff Peevers and her juvenile companion in his patrol car, thereby arresting them, he went back to examine the area from which the juveniles had fled. Defendant Cox asserts in his affidavit that it was when he returned to this scene that he discovered the "burnt grass, several smoked cigarettes, and a burnt piece of wood."  (*Id.*). This subsequently discovered evidence could not have contributed to the probable cause that Defendant Cox allegedly had when he arrested Plaintiff Peevers because he did not discover

11

it until after Plaintiff had already been placed in the patrol car.[6]  Thus, the analysis applied above to Defendants' argument regarding probable cause to arrest for obstructing also applies here to Defendants' claim that summary judgment should be granted as to whether Defendant had probable cause to arrest Peevers.  It is for a jury decide whether Defendant had probable cause at the time of the arrest, based on the smoke observed and the flight of the juveniles, to arrest Plaintiff Peevers for fourth degree arson.  The facts before the court indicate that the burnt items were not discovered until *after* Peevers was arrested.  Thus, those facts could not contribute to probable cause to arrest.  We think a reasonable jury could find that the flight and smoke, without more, did not give rise to probable cause to arrest.

In Defendants' reply brief they assert that Plaintiff Peevers was never arrested, but rather that she was simply taken into custody because she was "in need of supervision" and as such her detention was justified and lawful even if there was no probable cause to arrest her for the offenses discussed above. (Doc. #34).  First, as the court explained above, Peevers' detention ripened into an arrest when she was placed in the police cruiser. *Supra*.  Next, the facts before the court do not permit us to find that Plaintiff Peevers was, as a matter of law, in need of supervision.  If this were so, then the police could conceivably claim that every unattended minor is in need of supervision and so could be detained without probable cause. We think that a reasonable jury could find that the facts of this case did not indicate that Plaintiff Peevers was in need of supervision.

For the foregoing reasons, Defendants' motion for summary judgment on Plaintiff Peevers' claim of violation of her Fourth Amendment rights by false arrest is **<u>DENIED</u>**.

///

///

---

[6]The evidence currently before the court does not make clear when, exactly, Plaintiff Peevers was handcuffed.

1

2

**III.     Malicious Prosecution/Probable Cause to Prosecute under the Fourth Amendment**

3

4

5

6

7

8

The Peevers/Noland complaints alleges causes of action for malicious prosecution in the sixth claim for relief against Defendant Elko County for the actions of its Deputy District Attorney, Michelle Rodriguez, and in the ninth claim for relief against Defendant Cox.  The Blankenship complaint alleges causes of action for malicious prosecution in the fifth claim for relief against Defendant Elko County for the actions of its Deputy District Attorney, Michelle Rodriguez, and in the sixth claim for relief against Defendant Cox.

9

10

11

12

13

14

15

16

17

18

19

Under Nevada law, the Plaintiff must satisfy four elements to make out a prima facie case for malicious prosecution: (1) want of probable cause to initiate the prior criminal proceeding; (2) malice; (3) termination of the prior criminal proceedings; and (4) damage. *Chapman v. City of Reno,* 455 P.2d 619, 620, 85 Nev. 365, 369 (1969); *see also Jordan v. Bailey*, 994 P.2d 828, 834, 113 Nev. 1038, 1047 (1997).  In this motion, Defendants contend only that there did exist probable cause to institute the proceedings against the minor Plaintiffs; they do not attack the other elements of Plaintiffs' claims or contend that the Defendants did not actually initiate any proceedings against the Plaintiffs.[7]  Thus, for purposes of this order, we need only consider whether there exist any disputes of material fact regarding whether there was probable cause to prosecute.

20

21

22

23

24

Under Nevada law, want of probable cause is judged by an objective test.  *Jordan v. Bailey*, 994 P.2d at 834, 113 Nev. at 1047.   Defendants are incorrect, however, that determination of probable cause is a purely legal question.  The cases to which Defendants cite all support the proposition that where there exists no dispute as to the material facts relied upon in filing the previous action, the issue is one of pure law.  *See*, *e.g.*, *Dutt v. Kremp*,

25

26

27

[7]Although it is not clear on what theory the Plaintiffs hope to proceed against Defendant Cox, since the evidence before the court indicates that it was Ms. Rodriguez, not Defendant Cox, who initiated the proceedings, the Defendants arguments do not address this issue and the court reserves it for another day.

28

844 P.2d 786, 789, 108 Nev. 1076, 1080 (1992), *Bonamy v. Zenoff*, 362 P.2d 445, 447, 77 Nev. 250, 252 (1961). Here, however, Defendants have not shown that no disputes of material fact remain.[8]

Although Defendants cite to law relevant to the malicious prosecution issues, they do not apply the facts of this case to the law. The citations they do provide appear in the section devoted to arguments regarding probable cause to arrest, where, logically, the analysis is devoted to probable cause to arrest, not probable cause to prosecute. In the section purporting to address the issue of probable cause to prosecute (beginning at Doc. #16, p. 25), Defendants' argument that "it was plainly obvious that these juveniles were jointly participating in an [sic] wrongful and illegal act" does not direct the court's attention to any admissible evidence supporting that assertion. Further, it quickly devolves into arguments regarding probable cause to arrest, concluding the fourth paragraph of the section with the assertion that "[t]herefore, all of the youth were properly taken into custody under Nevada law," even though the issue is probable cause to prosecute, not arrest or detention. (Doc. #16, p. 26). The remaining five and one half pages of this section discuss cases dealing with probable cause to *arrest* suspects where it cannot be determined with certainty which, of several individuals present, was responsible for the alleged criminal conduct.

Given the conflation of the issues, at best the court is left with Defendants' argument that the filing of charges against Plaintiff Peevers for Fourth Degree Arson (Nev. Rev. Stat. 205.025) and the subsequent filing of charges against both minor Plaintiffs for Willful or Negligent Failure to Guard or Extinguish Fire (Nev. Rev. Stat. 475,010) was supported by the Plaintiffs' presence around the fire. Thus, the question is whether the Plaintiffs' presence around the fire (such presence being undisputed) gives rise to probable cause to prosecute

---

[8]Instead, they argue at one point that the Plaintiffs were never charged with any crime: "... the juveniles in this case were not charged with any crime, let alone a felony." (Doc. #16, p. 18). Then, a few pages later, Defendants argue that "Plaintiffs' presence around the fire fully supported the charge of fourth degree arson." (Doc. #16, p. 25). Fourth Degree Arson is a felony. Nev. Rev. Stat. 205.025.

for (1) Fourth Degree Arson, and (2) Willful or Negligent Failure to Guard or Extinguish Fire as a matter of law.

Fourth Degree Arson

NEV. REV. STAT. 205.025 provides:

> 1. A person who willfully and maliciously attempts to set fire to or attempts to burn or to aid, counsel or procure the burning of any of the buildings or property mentioned in NRS 205.010; , 205.015; and 205.020, or who commits any act preliminary thereto or in furtherance thereof, is guilty of arson in the fourth degree [sic] which is a category D felony and shall be punished as provided in NRS 193.130, and may be further punished by a fine of not more than $5,000.

> 2. In any prosecution under this section [sic] the placing or distributing of any inflammable, explosive or combustible material or substance, or any device in any building or property mentioned in NRS 205.010; [sic], 205.015; and 205.020, in an arrangement or preparation eventually to set fire to or burn the building or property, or to procure the setting fire to or burning of the building or property, is prima facie evidence of a willful attempt to burn or set on fire the property.

The court reads "willfully or maliciously" to be an essential element of the crime. The defendants have not presented any evidence showing that Defendant Rodriguez had probable cause to believe that Plaintiff Peevers had the requisite mental state. Mere presence around the fire does not give rise to probable cause to prosecute for Fourth Degree Arson.

The court notes that although their briefs never cite to it, the Defendants attached exhibit 22, the affidavit of Deputy District Attorney Michelle Rodriguez, to the instant motion. In it, she admits that "It appeared clear to me that someone had intentionally set a small fire ... I could not determine from the materials presented [to me by the Juvenile Division of the Fourth Judicial District Court] who started the fire, but I felt that if Ms. Peevers did not actually start the fire she would have been an accomplice in the process." The affidavit attaches the documents Defendant Rodriguez relied upon in making her determination, which includes (1) a Sheriff's Office Offense Report from Defendant Cox, (2) an Elko County Juvenile Probation Police Synopsis Report (providing Defendant Cox's

15

report), (3) an Elko County Sheriff's witness statement form from Plaintiff Staci Blankenship, and (4) copies of photos of the area where the incident allegedly occurred.  (Doc. #19, Exh. 22).  None of these documents indicates willfulness or maliciousness on the part of Plaintiff Peevers.  At best, it provides the hearsay statement of Plaintiff Blankenship that Plaintiff Peevers smoked a cigarette.

Given the above, the court finds that the undisputed fact that Defendants have provided (Plaintiff Peevers' presence around the fire) does not, by itself, provide probable cause to prosecute for Fourth Degree Arson.  As such, Defendants' motion for summary judgment on Plaintiffs' claim of malicious prosecution (in the sixth claim for relief against Elko county for the actions of Deputy District Attorney Rodriguez and in the ninth claim for the relief against Defendant Cox) is **DENIED**.

Willful or Negligent Failure to Guard or Extinguish Fire

Nev. Rev. Stat. 475.010 provides:

Every person who willfully or negligently sets or fails to guard carefully or extinguish any fire, whether on his own land or the land of another, whereby the timber or property of another is endangered is guilty of a misdemeanor.

Like the statute above, the court reads "willfully or negligently" to be an essential element of the crime.  Likewise, the Defendants have not here presented any evidence showing that Ms. Rodriguez had probable cause to believe that Plaintiff Peevers and Plaintiff Staci Blankenship had the requisite mental state.  Mere presence around the fire does not give rise to probable cause showing that the Plaintiffs were willful or negligent in their guarding of the fire.  At minimum, Defendants must show that Defendant Rodriguez had probable cause to believe that the Plaintiffs had not exercised due care in guarding the fire.  Rather, the undisputed fact that the two minors were standing around the fire gives rise to an inference that they *were* guarding the fire, at least until they retreated around the corner of the building.  Without more, such evidence is insufficient to support a charge of Willful or Negligent Failure to

Guard or Extinguish Fire under NEV. REV. STAT. 475.010.  As such, Defendants' motion for summary judgment on Plaintiffs' claims of malicious prosecution (in the sixth and ninth claims for the relief in the Peevers complaint and in the fifth and sixth claims for relief in the Blankenship complaint) is **<u>DENIED</u>**.

### IV. Qualified Immunity Standard

Under certain circumstances state officials are entitled to qualified immunity when sued in their personal capacities.  *Carey v. Nevada Gaming Control Board*, 279 F.3d 873, 879 (9th Cir. 2002).  When a state official reasonably believes his or her acts were lawful in light of clearly established law and the information they possessed, the official may claim qualified immunity.  *Kennedy v. Los Angeles Police Dept.*, 901 F.2d 702, 706 (9th Cir. 1985).  Where "the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate."  *Saucier v. Katz*, 533 U.S. 194, 202 (2001).

In analyzing whether the defendant is entitled to qualified immunity, the court must consider two issues.  First, the court must make a threshold inquiry into whether the plaintiff alleges deprivation of a constitutional right.  *Hope v. Pelzer*, 536 U.S. 730, 736 (2000); *Saucier,* 533 U.S. at 201.  If no constitutional violation occurred, the court need not inquire further. *Saucier*, 533 U.S. at 201.  If a constitutional violation did occur then the court must next establish whether the right was clearly established at the times of the alleged violation such that the official could have reasonably, but mistakenly, believed that his or her conduct did not violate a clearly established right.  *Saucier*, 533 U.S. at 202.

Here, Defendants argue that Defendant Cox is entitled to qualified immunity in regards to Plaintiffs' claims of Fourth Amendment violations.  First, Plaintiff Peevers has alleged deprivation of her Fourth Amendment right to be free from unreasonable search and seizure, since she has alleged that Defendant Cox lacked probable cause when he placed her under arrest.  If he did lack probable cause then her rights have been violated.  Because summary judgment has already been granted as to Plaintiff Blankenship's Fourth

17

1   Amendment claims, the court need not reach the question of qualified immunity as it pertains

2   to her claims.

3          Next, we turn our inquiry to whether this right was clearly established such that a

4   reasonable officer in Defendant Cox's position could reasonably, but mistakenly, believe that

5   his conduct did not violate the Plaintiff Peevers' constitutional rights.   It was clearly

6   established at the time of the alleged events that a detention ripens into an arrest where a

7   reasonable person would believe he is not free to leave after brief questioning. *United States*

8   *v. Del Vizo*, 918 F.2d 821.  Further, as stated above, whether or not the person is "free to

9   leave" is evaluated from the perspective of the person seized.  *United States v. Delgadillo-*

10  *Vasquez*, 856 F.2d 1292.  As explained above, in this case Plaintiff Peevers was handcuffed,

11  placed in the back of the police car, and transported to the juvenile detention facility.  The

12  court finds that this exceeded a mere detention and ripened into an arrest.  Further, the court

13  finds that it ripened into an arrest at the moment the Plaintiff was placed in the back of the

14  police car, regardless of whether she was handcuffed then or whether it was not until later

15  that she was handcuffed.  The facts before this court indicate that Plaintiff was placed in the

16  police car before he went over to examine the burnt grass, etc.  Given the chronology, no

17  reasonable officer in Defendant Cox's position could have though that he had probable cause

18  to arrest Plaintiff Peevers at that time.  While he may have had reasonable suspicion such that

19  he would be justified in stopping Plaintiff and her companions and questioning them about

20  their involvement in the incident, he needed additional facts before he could have reasonably

21  be said to have had probable cause to arrest.  As such, under these circumstances Defendant

22  is not entitled to qualified immunity.

23  **III.   Emotional Distress claims**

24         Defendants ask the court to find that Plaintiffs' cause of action for intentional infliction

25  of emotional distress "fails to state a viable claim for relief."  This is essentially a motion to

26  dismiss, under FED. R. CIV. P. 12(b)(6).  "A dismissal under FED. R. CIV. P. 12(b)(6) is

27  essentially a ruling on a question of law."  *North Star Int'l v. Ariz. Corp. Comm.,* 720 F.2d

28

18

578, 580 (9th Cir. 1983) (citation omitted).  In considering a motion to dismiss for failure to state a claim upon which relief may be granted, all material allegations in the complaint are accepted as true and are to be construed in a light most favorable to the non-moving party. *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-38 (9th Cir. 1996) (citation omitted).  For a defendant-movant to succeed, it must appear to a certainty that a plaintiff will not be entitled to relief under any set of facts that could be proven under the allegations of the complaint.  *Id*. at 338.  A complaint may be dismissed as a matter of law for, "(1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal claim." *Smilecare Dental Group v. Delta Dental Plan,* 88 F.3d 780, 783 (9th Cir 1996) (quoting *Robertson v. Dean Witter Reynolds, Inc.,* 749 F.2d 530, 534 (9th Cir. 1984)).

Under Nevada law the tort of outrage, or intentional infliction of emotional distress (IIED), consists of four elements: "(1) extreme and outrageous conduct on the part of the defendant; (2) intent to cause emotional distress or reckless disregard for causing emotional distress; (3) that the plaintiff actually suffered extreme or severe emotional distress; and (4) causation." *Miller v. Jones*, 114 Nev. 1291, 1300, 970 P.2d 571, 577 (1998).

Here, Plaintiff Peevers makes a claim against Defendant Cox for the tort of outrage in her third claim for relief.  The third claim for relief also makes a claim against Defendant Elko County on the basis that they ratified the allegedly tortious action of Defendant Cox.  Plaintiff Blankenship's third claim for relief also makes a claim against Defendant Cox for the tort of outrage and against Defendant Elko County for ratifying his allegedly tortious conduct.  The facts that Plaintiffs allege support these claims are set forth above.  The conduct complained of by Plaintiffs does not rise to the level of extreme and outrageous and Plaintiffs have not alleged that they have suffered severe emotional distress. (Doc. #2 in 05-00357 and Doc. #2 in 04-00643).  Rather, they both allege that the minors experienced simple "emotional distress." (*Id*.).  The only "severe emotional distress" alleged in the complaints is that of the parent Plaintiffs.  Thus, Plaintiffs have failed to state a claim for IIED.  Defendant's motion to dismiss Plaintiff's claims of intentional infliction of emotional distress is **GRANTED**.

1    Next, Defendants claim that the parental claims for negligent infliction of emotional

2    distress also fail as a matter of law because they are derivative of the minors' claims and thus

3    the infirmities in those claims are fatal to these claims as well.  Defendants provide the court

4    with absolutely no authority for this proposition, nor any analysis besides the conclusory

5    statement recounted in this paragraph.[9]  In fact, negligent infliction of emotional distress is

6    a completely separate tort from IIED.  Under the local rules, "[a]ll motions ... shall be

7    supported by a memorandum of points and authorities." D. Nev. R. 7-2(a) (motions). "The

8    failure of a moving party to file points and authorities in support of the motion shall

9    constitute a consent to the denial of the motion." D. Nev. R. 7-2(d) (motions). Thus, the

10   briefing before the court does not provide sufficient grounds on which the court can grant the

11   motion as to the negligent infliction of emotional distress claims.  As such, the motion to

12   dismiss Plaintiffs' claims of negligent infliction of emotional distress is **DENIED**.

13   **IV.    Battery claims**

14   Plaintiff Peevers asserts a claim of battery against Defendant Cox in her fifth claim for

15   relief.  The Blankenship complaint does not include any causes of action for battery.

16   Defendants argue that the battery claim should be dismissed because the arrest was lawful

17   and thus there can be no battery claim based on the arrest.  First, as we indicated above, the

18   arrest of Plaintiff Peevers was not clearly lawful.  Thus, Defendants argument on this ground

19   must fail.  Second, Defendants have not provided a single citation to any authority in the

20   section of their motion requesting summary judgment on the battery claim.  It is not the

21   court's duty to do Defendants' legal research.  A motion for summary judgment should be

22   granted only where "the pleadings, depositions, answers to interrogatories, and admissions

23

24          [9]In their reply brief (Doc. #34) Defendants cite to *State v. Eaton*, 101 Nev. 705, 718, 710 P.2d
       1370, 1379 (1985), for the proposition that the parents must have been bystanders in order to have a
       claim for infliction of emotion distress. *Eaton*, however, deals with intentional infliction of emotional
25     distress. The parent Plaintiffs in this case both make claims for negligent infliction of emotion distress.
       (Plaintiffs Noland in their fourth claim for relief and the Plaintiffs Blankenship in the fourth claim for
26     relief). Further, the court interprets the fourth claim for relief in the Blankenship complaint to be on
       behalf of all three Blankenship Plaintiffs since it says only "Plaintiffs," and does not include any
27     language specific to any of the three Plaintiffs.

28                                                20

on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).  Further, as stated above, under the local rules, "[a]ll motions ... shall be supported by a memorandum of points and authorities." D. Nev. R. 7-2(a) (motions). "The failure of a moving party to file points and authorities in support of the motion shall constitute a consent to the denial of the motion." D. Nev. R. 7-2(d) (motions). Here, Defendants failure to provide any points and authorities regarding the Nevada state law governing battery claims makes the pleadings an insufficient basis on which to grant the motion. Defendants have not met their burden. Accordingly, the motion for summary judgment on the battery claim is **DENIED**.

**VI.    Policy or Custom of Elko County claim and claims that Deputy District Attorney Michelle Rodriguez was a policy maker for Elko County**

Both complaints assert a claim against Elko County for violations of Plaintiffs' constitutional rights: the Blankenship complaint for violation of the minor Blankenship's Fourth Amendment rights under section 1983 and the Noland/Peevers complaint for violation of Peevers's Fourth Amendment rights under section 1983. (Doc. #16). Defendants argue that there is no evidence of any custom or practice which caused the deprivation of the Plaintiffs' Constitutional rights. (*Id.*). Defendants also argue that claims arising from the actions of Deputy District Attorney Michelle Rodriguez also must fail because she was not a "policy maker." (*Id.*). Again, Defendants fail to cite to any legal authority in the sections of their motion in which they raise these arguments. As stated above, the local rules require that the motion be supported by points and authorities. D. Nev. R. 7-2(a) (motions). Failure to provide such authority constitutes consent to a denial of the motion. D. Nev. R. 7-2(d) (motions). Accordingly, because Defendants motion fails to provide points and authorities on the issue of Elko County's liability, either for any custom or policy it allegedly had that violated the Plaintiffs' rights under the Fourth Amendments or for any liability it might have incurred based on the actions of Ms. Rodriguez, the motion is **DENIED**.

## ORDER

**IT IS HEREBY ORDERED** that the Defendant's motion for summary judgment (Doc #16) be **GRANTED** as to Plaintiff Staci Blankenship's first and second claims for relief (related to violation of her Fourth Amendment rights), **GRANTED** as to Plaintiff Blankenship's unlawful arrest claims from her seventh claim for relief, and **GRANTED** as to Plaintiffs Peevers and Staci Blankenship's claims of intentional infliction of emotional distress.  The motion for summary judgment on Plaintiff Peevers' claim of violation her Fourth Amendment rights by false arrest is **DENIED**.  The motion for summary judgment on Plaintiffs' claims of malicious prosecution  (in the sixth and ninth claims for the relief in the Peevers complaint and in the fifth and sixth claims for relief in the Blankenship complaint) is **DENIED** as to the prosecutions for both Fourth Degree Arson and Willful or Negligent Failure to Guard Fire.  The motion to dismiss Plaintiffs' claims of negligent infliction of emotion distress is **DENIED**.  The motion for summary judgment on the battery claim is **DENIED**.  Finally, the motion for summary judgment on the issue of Elko County's liability is also **DENIED**.

DATED:   March 19, 2007.

_____
UNITED STATES MAGISTRATE JUDGE